# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

```
IN RE LETTER OF REQUEST        )
FROM THE UKRAINE               )
IN THE MATTER OF               )    Misc. No. 07-
ACTEX CORPORATION              )
```

## GOVERNMENT'S MEMORANDUM OF LAW
## IN SUPPORT OF APPLICATION FOR ORDER

This memorandum of law is submitted in support of the Application for an Order pursuant to Title 28, United States Code, Section 1782, in order to execute a  letter of request from the Ukraine.  A copy of the translation is attached.

FACTUAL BACKGROUND:

This investigation is being conducted by the Ukrainian authorities who are investigating a case of alleged smuggling.

EVIDENCE SOUGHT:

The Ukrainian authorities seek information from a company which resides in this District and the Delaware Secretary of State's Office. Thus, the information the Ukrainians seek may be obtainable here.  The authority for this Court to accede to this request is contained in Title 28, United States Code, Section 1782, which states in part:

(a)  The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation.  The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other

thing be produced, before a person appointed by the court.    By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement.    The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing.    To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

The proper criteria for determining whether the court should exercise its discretion in favor of executing the request are outlined in *In Re Request for Judicial Assistance from the Seoul District Criminal Court*, 555 F.2d 720, 723 (9th Cir. 1977) (citation omitted):

> Under the statute the only restrictions explicitly stated are that the request be made by a foreign or international tribunal, and that the testimony or material requested be for use in a proceeding in such a tribunal.... [and] that the investigation in connection with which the request is made must relate to a judicial or quasi-judicial controversy.

Moreover, " (t)he judicial proceeding for which assistance is sought ... need not be pending at the time of the request for assistance; it suffices that the proceeding in the foreign tribunal and its contours be in reasonable contemplation when the request is made." In Re Letter of Request from the Crown Prosecution Services of the United Kingdom, 870 F.2d 686, 687 (D.C. Cir. 1989).

The letter of request in this case shows that the information sought is for use in such proceedings in the Ukraine and hence the request comes well within those circumstances contemplated by Congress in expanding the Federal Courts' authority to act in such matters. *In Re Letter of Request from the Crown Prosecution Service of the United Kingdom*, 870 F.2d 686, 689-91 (D.C. Cir. 1989); *In Re Letters Rogatory from the Tokyo District, Tokyo, Japan*, 539 F.2d 1216, 1219 (9th Cir. 1976). Therefore, I ask this Court to honor the request for assistance.

The reception of letters of request and the appointment of a Commissioner to execute them are matters customarily handled _ex parte,_ and persons with objections to the request raise those objections by moving to quash any subpoenas issued by the Commissioner. *Id.*

**WHEREFORE**, the United States requests that the Court issue an Order, in the form, appended hereto, appointing a Commissioner in order to execute the request for assistance.

Respectfully submitted,

COLM F. CONNOLLY
United States Attorney

BY: _____

David L. Hall
Assistant U.S. Attorney
1007 N. Orange Street
Wilmington, DE    19801
(302) 573-6277

Dated: 4/16/07

I

TO:         The International Department

            The Criminal Office

            Department of Justice

            The United States of America


Concerning:    request for granting of assistance in the

               investigation of the criminal case, brought

               upon the fact of smuggling of cars to

               Ukraine

Ukraine is requesting for granting of assistance by the competent authorities of the United States according to the Treaty between the United States of America and Ukraine about mutual legal assistance in criminal matters, signed in July, 22, 1998 in Kyiv.

The Investigation Department of the Office of the Security Service of Ukraine in Dnipropetrovsk region investigates the criminal case No 236, brought in July, 29, 2006 upon the fact of smuggling of cars (on 06/18/2006 – 4 TOYOTA Camry cars in total amount of 449,096 hrivnas in Yalta seaport; on 05/15/2006 and on 06/06/2006 – 8 MAZDA-6 cars in total amount of 647,410 hrivnas in Sevastopol seaport; total 1,096,506 hrivnas) through the customs border of Ukraine with concealment from the customs control by means of submitting of the forged documents to the customs, committed by a group of unascertained persons upon their prior conspiracy, that is on the indicia of the crimes provided for by the Article 201 part 2 and the Article 358 part 3 of the Criminal Code of Ukraine.

**The investigator needs the following information:**

1. Relevant documentation of American ALTEX CORP. company (WILMIGTON DE 19801 USA 1220 N MARKET STREET SVITE 606 IBAN:

Translator                                                L.O. Kulchitska

2

██████████ PAREX BANK, RIGA, LATVIA SWIFT CODE: ██████████ – agreements, contracts, invoices, book-keeping papers concerning sale and delivery of cars, as well as bank letters concerning payments for the cars delivered, in order to establish if cars were sold and delivered to the address of Ukrainian TRANSSYGNAL OLK Limited Liability Company (LLC) (Vinnitsya).

2. Interrogate as witnesses the employees of ACTEX CORP. – its director, accounting manager, and employees responsible for sale and delivery of cars, concerning the sale and delivery of cars to the address of TRANSSYGNAL OLK LLC (Vinnitsya).

It is seen from the Criminal Case that 12 mentioned cars were imported to Ukraine in the service area of Crimean and Sevastopol Customs. On the basis of the forged power of attorney BCB No ██████ issued by Ahmadov Anar Hasan ogly (OR: Ahmedov Anar Gasan ogly), a citizen of Azerbaijan, to Tsado Viktor Mikhaylovich (Dnipropertovsk), a citizen of Ukraine, on 05/26/2005, 12 mentioned cars were submitted by Tsado V. M. to the customs registration as cars bought by Ahmadov A.H. from the AUTO SHOW IMPORT-EXPORT KARAKOY-ISTANBUL firm (Mocan han No:3/2 Karakoy / ISTANBUL Tel: (0212) 293-19-25), according to 12 invoices and 12 bills of lading of Tsado.

On the basis of documents submitted by Tsado V. M., the officers of Crimean and Sevastopol customs registered and put forth four cars:

- TOYOTA Camry 3.0 Sedan A/T, engine volume 2995 cm.$^3$, body No ██████████ engine No ██████ model year 2006, black, price 19,000 USD, invoice No Y379910 dated as of 06/07/2006, bill of lading No 5 dated as of 06/16/2006;

- TOYOTA Camry 3.0 Sedan A/T, engine volume 2995 cm.$^3$, body No ██████████ engine No ██████ model year 2006, black, price 19,000 USD, invoice No Y379911 dated as of 06/07/2006, bill of lading No 5 dated as of 06/16/2006;

Translator                                                              L.O. Kulchitska

3

- TOYOTA Camry 3.0 Sedan        A/T, engine volume 2995 cm.$^3$, body No ████████████ engine No █████ model year 2006, gray, price 19,000 USD, invoice No Y379912 dated as of 06/07/2006, bill of lading No 5 dated as of 06/16/2006;

- TOYOTA Camry 3.0 Sedan A/T, engine volume 2995 cm.$^3$, body No ████████████ engine No █████ model year 2006, beige, price 19,000 USD, invoice No Y379913 dated as of 06/07/2006, bill of lading No 5 dated as of 06/16/2006;

And eight cars:

- MAZDA-6 Sedan 2.0 A/T, engine volume 1999 cm.$^3$, body No ████████████ engine No█████ model year 2006, black, price 14,100 USD, invoice No Y379899 dated as of 05/11/2006, bill of lading No 28 dated as of 05/14/2006;

- MAZDA-6 Sedan 2.0 A/T, engine volume 1999 cm.$^3$, body No ████████████ engine No█████model year 2006, black, price 13,700 USD, invoice No Y379900 dated as of 05/11/2006, bill of lading No 29 dated as of 05/14/2006;

- MAZDA-6 Sedan 2.0 A/T, engine volume 1999 cm.$^3$, body No ████████████ engine No█████model year 2006, gray, price 13,700 USD, invoice No Y379901 dated as of 05/11/2006, bill of lading No 30 dated as of 05/14/2006;

- MAZDA-6 Sedan 2.0 A/T, engine volume 1999 cm.$^3$, body No ████████████ engine No█████ model year 2006, gray, price 13,700 USD, invoice No Y379903 dated as of 05/11/2006, bill of lading No 32 dated as of 05/14/2006;

- MAZDA-6 Sedan 2.0 A/T, engine volume 1999 cm.$^3$, body No ████████████ engine No█████ model year 2006, gray, price 14,100 USD, invoice No Y379898 dated as of 05/11/2006, bill of lading No 27 dated as of 05/14/2006;

Translator                                                        L.O. Kulchitska

4

- MAZDA-6 Sedan 2.0 A/T, engine volume 1999 cm.³, body No ███████████████ engine No ███████ model year 2006, black, price 13,700 USD, invoice No Y379902 dated as of 05/11/2006, bill of lading No 31 dated as of 05/14/2006;

- MAZDA-6 Sedan 2.0 A/T, engine volume 1999 cm.³, body No ███████████████ engine No LF███████ model year 2006, black, price 13,700 USD, invoice No Y379907 dated as of 05/31/2006, bill of lading No 33 dated as of 06/14/2006;

- MAZDA-6 Sedan 2.0 A/T, engine volume 1999 cm.³, body No ███████████████ engine No LF███████ model year 2006, gray, price 13,700 USD, invoice No Y379908 dated as of 05/31/2006, bill of lading No 34 dated as of 06/14/2006.

Then, some MAZDA-6 cars were sold on the territory of Ukraine with participation of Dubravin Mikhail Borisovich, director of the auto house ORION private enterprise (PE) (Dnipropetrovsk, pr. Gazety im. Pravda, 96a).

On 06/18/2006 the officers of the Security Service of Ukraine detained the 4 TOYOTA Camry cars on suspicion of their contraband import to the Ukraine. On 06/18/2006 during the scene examination the driver of the car carrier, on which the abovementioned cars were transferred, informed that the given cars went to Dnipropetrovsk to the auto house ORION PE.

The Security Service of Ukraine has received a letter No 251-5522 dated as of 06/30/2006 from the Turkish law-enforcement bodies through the International Cooperation Center. In this letter it was indicated that in 2006 AUTO SHOW IMPORT-EXPORT KARAKOY-ISTANBUL didn't make any export operations, and the 4 TOYOTA Camry cars were sold by the KHALED ESREB – IMPORT\EXPORT SYRIA-LATTAKIA company (Syria) and were conveyed as transit goods via the territory of the Turkey to Ahmadov A.H.

According to the letter of the National Bureau of Interpol of the Ukrainian Ministry of Internal Affairs No ██████████████████ as of 08/08/2006, AUTO SHOW IMPORT-EXPORT KARAKOY-ISTANBUL is not located at the

Translator                                                                                          L.O. Kulchitska

5

address indicated in the invoices, its phone number indicated in the invoices has been owned by another organization for two years.

In July, 14, 2006 during the examination of the 4 TOYOTA Camry cars the officers found a pack with a logo of the MEROTO company (Turkey, ITHALAT-IHRACAT ve OTOMOTIV TICARET LIMITED SIRKETI Sicil No: 164041 / 111489 Balmumcu, Barbaros Bulvari No. 127, 80700 Besiktas -- ISTANBUL) in one of these cars. The pack contained 3 invoices dated as of 06/08/2006 for the 8 abovementioned MAZDA-6 cars delivered to Ukraine in May, 15 and June, 6, 2006. In the 3 found invoices it was indicated that consignor of the cars was the Mazda Motor Turkiye A.S. firm (P.K. 194 Kartal 34873 ISTANBUL Tel.: (0216) 387-33-70 (Pbx) Faks: (0216) 353-79-95) and consignee of the cars was ACTEX CORP. (WILMIGTON DE 19801 USA 1220 N. MARKET STREET SVITE 606 SBAN: ██████████ PAREX BANK, RIGA, LATVIA SWIFT CODE: PARX LV 22). Shipment of the cars on the basis of the 3 invoices is confirmed by the letter of representative of MAZDA car producer in Turkey, received by AUTO International and forwarded by the latter to the address of the Security Service of Ukraine as letter No 410 as of 08/01/2006.

However, the data of 3 invoices dated as of 06/08/006 are false because the 8 MAZDA-6 cars set forth therein were delivered to Ukraine to the address of Ahmadov A.H. on 05/15/2006 and 06/06/2006, and registered in the Customs by V.M. Tsado on the basis of the forged power of attorney, put forth and sold to Ukrainian citizens, and registered in the State Road Inspection of Ukraine before 06/08/2006.

Interrogated as a witness Ahmadov Anar Hasan ogly said that he has never given the power of attorney BCB No 922837 to Tsado V.M., has not known Tsado, has not bought 12 cars (4 TOYOTA Camry and 8 MAZDA-6 cars), has not known that the noted cars were delivered to Ukraine to his address, he has not been waiting for their arrival. Also he said that he knew nothing about the persons involved in forgery of the power of attorney and smuggling of the noted 12 cars to Ukraine.

The expert conclusion No173/1 as of 06/26/2006 testifies that the signature in the power of attorney BCB No922837 as of 05/26/2005 and the example signatures of Ahmadov A.H. are different in transcriptions, measure of work-out, degree of right incline and size.

Translator                                                                                      L.O. Kulchitska

6

**Therefore, the persons unknown    to the investigation, acting by previous conspiracy, prepared forged documents for the noted 12 cars delivered to Ukraine, and then submitted the documents to the Ukrainian Customs; on the basis of the documents the cars were registered in the customs and put forth, so the persons have committed the crime provided for by part 2 art. 201 and part 3 art. 358 of the Criminal Code of Ukraine.**

Also in the course of the investigation in October 25, 2005 ORION PE (Dnipropetrovsk) was searched, as a result of search a dealer agreement was seized. According to that agreement, TRANSSYGNAL OLK LLC (Ukraine, Vinnitsya, vul. Botanichna, 17) gave for sale to ORION PE the following 10 cars, previously consigned by TRANSSYGNAL OLK LLC from ACTEX CORP. (WILMIGTON DE 19801 USA 1220 N. MARKET STREET SVITE 606) on the basis of the contracts No 5/2006 as of 01/04/2006 and No 8/2006 as of 01/12/2006,:

- TOYOTA Camry, engine volume 3456 cm$^3$, body No ██████████ engine No 2GR, model year 2006, black, price 23,500 USD, invoice No 082/06 dated as of 06/26/2006.

- HONDA Accord, engine volume 1998 cm$^3$, body No ██████████ engine No ██████████ model year 2006, black, price 17,250 USD, invoice No 064/06 dated as of 06/14/2006.

- HONDA Accord, engine volume 1998 cm$^3$, body No ██████████ engine No ██████████ model year 2006, black, price 17,250 USD, invoice No 065/06 dated as of 06/14/2006.

- LEXUS GX 470, engine volume 4664 cm3, body No ██████████ engine No ██████████ model year 2006, black, price 32,000 USD, invoice No 113/06 dated as of 09/11/2006;

- LEXUS GX 470, engine volume 4664 cm3, body No ██████████ engine No ██████████ model year 2006, black, price 32,000 USD, invoice No 112/06 dated as of 09/11/2006;

Translator                                                    6                          L.O. Kulchitska

- TOYOTA PRADO, engine volume 3956 cm3, body No ████████████████ engine No ████████████ model year 2006, gray, price 27,250 USD, invoice No 117/06 dated as of 10/07/2006;

- MAZDA-6 SEDAN 2.0 A/T, engine volume 1999 cm3, body No ████████████████ engine No ██████████ model year 2006, black, price 15,350 USD, invoice No ████████ dated as of 08/14/2006;

- MAZDA-6 SEDAN 2.0 A/T, engine volume 1999 cm$^3$, body No ████████████████ engine No ██████████ model year 2006, black, price 15,350 USD, invoice No C379932 dated as of 08/14/2006;

- MAZDA-6 SEDAN 2.0 M/T, engine volume 1999 cm3, body No ████████████████ engine No ██████████ model year 2006, gray, price 13,500 USD, invoice No C379937 dated as of 09/06/2006;

- MAZDA-6 SEDAN 2.0 A/T, engine volume 1999 cm3, body No ████████████████ engine No ██████████ model year 2006, gray, price 15,350 USD, invoice No C379932 dated as of 08/14/2006.

## ARTICLE 201 of the Criminal Code of Ukraine.
### Smuggling

1. Smuggling, that is the movement of goods through the customs border of Ukraine beyond the customs control or with concealment from the customs control, if committed in large amounts, as well as the illegal movement of historical and cultural values, poisonous, strong, radioactive or explosive substances, weapons and ammunition (except smoothbore hunting rifles and ammunition thereto), and also smuggling of strategically important raw materials the export of which from Ukraine is regulated by the appropriate rules established by the law, –

to be punished by imprisonment for a term of three to seven years with confiscation of the smuggled items.

2. The same actions committed by a group of persons upon their prior conspiracy, or by a person previously convicted of a criminal offence under this Article, –

Translator                                    L.O. Kulchitska

to be punished by imprisonment for a    term of five to twelve years with confiscation of the smuggled items and confiscation of the property.

**Note.** Smuggling of goods is considered committed in large amounts if the value of such goods equals to or exceeds 1,000 tax-free minimum incomes (that is 175,000 hryvnas).

## ARTICLE 358 of the Criminal Code of Ukraine.

### Forgery of documents, stamps, seals or letterheads, and sale or use of forged documents

1. Forgery of an identification card or any other document issued or certified by an enterprise, institution, organisation, individual entrepreneur, private notary, auditor or any other person authorised to issue or certify such documents, or any document that grants any rights or discharges from any obligations, for the purpose of using it by the forger or any other person, or sale of any such document, and also making of forged stamps, seals or letterheads of enterprises, institutions or organisations of any type of ownership, and any other official stamps, seals and letterheads for the same purpose, and sale of the same, –

to be punished by a fine up to 70 tax-free minimum incomes, or arrest for a term up to six months, or restraint of liberty for a term up to three years.

2. Any such actions as provided for by paragraph 1 of this Article, if repeated, or committed by a group of persons upon their prior conspiracy, –

to be punished by restraint of liberty for a term up to five years, or imprisonment for the same term.

3. The use of a knowingly forged document, –

shall be punished by a fine up to 50 tax-free minimum incomes, or arrest for a term up to six months, or restraint of liberty for a term up two years.

The enterprises involved:

Translator                                                                L.O. Kulchitska

1. ACTEX CORP. (WILMIGTON DE 19801 USA 1220 N. MARKET STREET SVITE 606 IBAN: ████████████ PAREX BANK, RIGA, LATVIA SWIFT CODE: ████████ head Sten Gorin;

2. TRANSSYGNAL OLK LLC (17 vul. Botanichna, Vinnitsya, Ukraine, 21000, Office: 600-Letija str.50, 21027, Vinnitsya. Code ████████ Settlement account ████████ in AVAL Bank in Vinnitsya, MFO 302247), director Olishevsky Vladislav Vikentiyovich;

3. ORION PE (legal address: Dnipropetrovsk region, Yuvileyny, vul. Teplichna, 36/66; factual address: Dnipropetrovsk, pr. Gazety im. Pravda, 96a; settlement account ████████ in the local office of PRIVATBANK bank, MFO ████████ settlement USD account ████████ and settlement EUR account ████████ in the local office of PRIVATBANK bank, MFO ████ director Dubravin Mykchaylo Borysovich.

**The documents needed:**

1. Establish location of ACTEX CORP. (WILMIGTON DE 19801 USA 1220 N. MARKET STREET SVITE 606 SBAN: ████████ PAREX BANK, RIGA, LATVIA SWIFT CODE: ████████ and interrogate as witnesses its heads (director and accounting manager), as well as employees, responsible for cars sale or purchase, export or import. Ask them the following questions:

   • When was the company founded, what are its legal and factual addresses? What state authorities is the company registered at and reports to concerning its business activity? What is the company's sphere of activity and is it related to car sale or purchase, export or import?

   • Do they know the following Turkish firms:

   AUTO SHOW IMPORT-EXPORT KARAKOY-ISTANBUL (Mocan han No:3/2 Karakoy / ISTANBUL Tel. (0212)293-19-25),

Translator                                                                    L.O. Kulchitska

MEROTO (ITHALAT-IHRACAT ve OTOMOTIV TICARET LIMITED SIRKETI Sicil No: 164041 / 111489 Balmumcu, Barbaros Bulvari No. 127, 80700 Besiktas - ISTANBUL), and

Mazda Motor Turkiye A.S. (P.K. 194 Kartal 34873 ISTANBUL Tel.: (0216) 387-33-70 (Pbx) Faks: (0216) 353-79-95), and

does their firm have business relation with them? If so, then do those relations concern car sale or purchase, export or import, and delivery?

- How many cars were sold or purchased, and delivered to the address of the above-mentioned firms in 2006, and according to what documents? Who is involved in shipment or receipt of the cars, and also car sale or purchase, their customs registration? What documents confirm this?

- What do they know about the purchaser or seller, consignee or consignor of the noted cars (names, surname, employing enterprise, its location, contact phone number);

- Show them the copies of the 3 invoices dated as of 06/08/2006 of Mazda Motor Turkiye A.S. for delivery of the 8 MAZDA-6 cars to the address of ACTEX CORP., which were in the pack with logo of the MEROTO firm. Ask them if they know the invoices shown; if the invoices represent the facts, and if Mazda Motor Turkiye A.S. exported and delivered cars to the address of ACTEX CORP. according to the noted invoices?

- If the noted copies are real and the 8 cars were sold and delivered in accordance with these invoices, then clarify: According to what documents and how many of the 8 cars were sold and delivered to the address of ACTEX CORP.? Who is involved in the cars shipment, purchase, and receipt? Who registered the cars in customs? Where and to whom were the noted cars delivered? What documents confirm this?

- What did ACTEX CORP. do with the noted cars? How it was confirmed in documents?

- Who exactly (names, surname, employing enterprise, its location, contact phone number) negotiated concerning sale and delivery of the noted 8 cars to

Translator                                                                                     L.O. Kulchitska

the address of ACTEX CORP. and how he did it (personally, by phone, by mail, or by e-mail)? What documents were submitted, prepared, signed, and registered? To whom were they given later? How was the payment for purchase of the noted cars made (cash or bank transfer)? What documents confirm this?

- Who exactly (names, surname, employing enterprise, its location, contact phone number) gave the data about ACTEX CORP. – the purchaser of the noted 8 cars, and how he did it (personally, by phone, by mail, or by e-mail)?

- Were there any agreements concluded for sale of the 8 cars to ACTEX CORP.? Who exactly (names, surname, employing enterprise, its location, contact phone number) presented ACTEX CORP. as the buyer of the 8 cars and how (personally, by phone, by mail, or by e-mail)? What documents confirm this? Where are the agreements kept at (if the agreements were not concluded then why)?

- Show them the copies of the 8 invoices of AUTO SHOW IMPORT-EXPORT KARAKOY-ISTANBUL, and ask them: Who (names, surname, employing enterprise, its location, contact phone number), how (personally, by phone, by mail, or by e-mail), and with what purpose asked Mazda Motor Turkiye A.S. to make the forged invoices dated as of 06/08/2006 for the 8 MAZDA-6 cars, in which Mazda Motor Turkiye A.S. is stated as consignor and ACTEX CORP. is stated as consignee, while by 06/08/2006 the noted cars had been brought in Ukraine on behalf of AUTO SHOW IMPORT-EXPORT KARAKOY-ISTANBUL to the address of Ahmadov Anar Hasan ogly, registered in customs by Tsado Viktor Mykhaylovich, and sold, with Mazda Motor Turkiye A.S. bearing no relation to the cars?

- Who is involved in making of the 3 forged invoices? For whom (names, surname, employing enterprise, its location, contact phone number) were they intended? To whom (names, surname, employing enterprise, its location, contact phone number) and how (personally, by mail) were they given? Why the 3 invoices were in the pack of MEROTO firm and were forwarded from

Translator                                                              L.O. Kulchitska

12

Turkey to Ukraine in the TOYOTA Camry car, which went from AUTO SHOW IMPORT-EXPORT KARAKOY-ISTANBUL to the address of Ahmadov Anar Hasan ogly?

- Do they know an Azerbaijanian Ahmadov Anar Hasan ogly, as well as Ukrainians (Dnipropetrovsk inhabitants) Tsado Viktor Mykhaylovich, Dubravin Mykhail Borisovich, Parfenenko Vladimir Victorovich (the latter is a business-partner of Dubravin M.B.), and also the ORION PE, which sells cars? Are the mentioned people and enterprise involved in preparation and receipt of the 3 forged invoices for purchase and delivery of the 8 cars to the name of ACTEX CORP.? If so, what was the role of either of them? What documents confirm this?

- If they do not know the shown copies, and if Mazda Motor Turkiye A.S. have not sold and delivered the 8 cars to ACTEX CORP., then ask: how can they explain the circumstances of origin of the noted documents and their later forwarding in the pack of MEROTO firm together with the 4 TOYOTA Camry cars (which went from AUTO SHOW IMPORT-EXPORT KARAKOY-ISTANBUL to the address Ahmadov Anar Hasan ogly) on the ship, which was going from Turkey to Ukraine?

- Show them a copy of the letter of representative of MAZDA manufacturer in Turkey (received by AUTO International and then forwarded by the latter to the Security Service of Ukraine as a letter No 410 dated as of 08/01/2006), confirming sale of the 8 MAZDA-6 cars by Mazda Motor Turkiye A.S. to ACTEX CORP. on 06/08/2006, and ask: How can they explain that the 8 cars, sold and delivered by Mazda Motor Turkiye A.S. to ACTEX CORP., were simultaneously sold by AUTO SHOW IMPORT-EXPORT KARAKOY-ISTANBUL and delivered to Ukraine to the address of Ahmadov A.H.?

- Show them copies of the invoices No 082/06 as of 06/26/2002, 064/06 and 065/06 as of 06/14/2006, 112/06 and 113/06 as of 09/11/2006, 117/06 as of 10/07/2006, C379932 as of 08/14/2006, C379937 as of 09/06/2006, and ask: if the cars, indicated in the noted invoices, were delivered to TRANSSYGNAL

OLC LLC (17 Botanichna str. Vinnitsya, Ukraine, 21000 Office: 600-Letija str.50, 21027, Vinnitsya) in accordance with the contracts No 5/2006 dated as of 01/04/2006 and 8/2006 dated as of 01/12/2006. If so, then how many of the cars?

- Who exactly (names, surname, employing enterprise, its location, contact phone number) negotiated concerning sale and delivery of 4 cars of the noted 10 cars (according to the invoices No C379932 as of 08/14/2006, C379937 as of 09/06/2006) through AUTO SHOW IMPORT-EXPORT KARAKOY-ISTANBUL to the address of TRANSSYGNAL OLC LLC, and how he did it (personally, by phone, by mail, or by e-mail)? What documents were submitted, prepared, signed, and registered? To whom were they given later? How was the payment for purchase of the noted cars made (cash or bank transfer)? What documents confirm this?

- From whom exactly (names, surname, employing enterprise, its location, contact phone number) and how (personally, by phone, by mail, or by e-mail) the data about AUTO SHOW IMPORT-EXPORT KARAKOY-ISTANBUL (consignor of the 8 cars) was given?

- Show copies of the letters No 251-5522 dated as of 06/30/2006 and No IP/5014/06/331/18932/€C/A7/1 dated as of 08/08/2006, and ask: if ACTEX CORP. knows that AUTO SHOW IMPORT-EXPORT KARAKOY-ISTANBUL is not located at the address indicated in the invoices and did not export any goods in 2006. What documents can confirm sale and delivery of the 4 cars to the address of TRANSSYGNAL OLC LLC through AUTO SHOW IMPORT-EXPORT KARAKOY-ISTANBUL?

2. Please let the interrogated employees of ACTEX CORP. identify Tsado V.M., Dubravin M.B., Parfenenko V.V. using the phototable.

3. Please seize from ACTEX CORP. the attested copies of the documents concerning the purchase and receipt of the 8 MAZDA-6 cars from Mazda Motor Turkiye A.S. in accordance with the 3 invoices as of 06/08/2006, and confirming

Translator                                                                    L.O. Kulchitska

what they did with the cars, and also the documents concerning the sale and delivery of the 10 cars to the address of TRANSSYGNAL OLK LLC.

4.  Please acquire from the United States law-enforcement bodies controlling import-export (customs etc.) the information if ACTEX CORP. purchased and received the 8 MAZDA-6 cars from Mazda Motor Turkiye A.S. in 2006, what did it do with them, and also the information if ACTEX CORP. sold and delivered the 10 cars to the address of TRANSSYGNAL OLK LLC in 2006.

*Please also ascertain other issues that may arise during the interrogation of the witnesses.*

## Procedure of Execution:

1. Concerning the acquiring of the documents from ACTEX CORP., please acquire high quality copies of the above noted documents. The copies are to be affixed with the company's seal and attested by the head's signature.

2. Concerning the interrogation of the witnesses and preparation of the results of the interrogation, please do the following:

1) Please start the interrogation from establishing the witness's full name, current address, date and place of birth.

2) Please inform the witness that he/she doesn't have to answer the questions about himself/herself, the members of his/her family or close relatives. Please also inform the witness that criminal proceedings may be instituted against him/her if he/she provides false answers to the other questions.

3) Please ask the required questions.

4) Please draw up the above information in a form of a transcript of interrogation. The transcript must contain:

-  the personal data provided by the witness;

-  the indication that the relevant authority of the USA has informed the witness that he/she doesn't have to answer the questions about himself/herself, the members of

Translator                                                                14                                    L.O. Kulchitska

15

his/her family or close relatives, but the other questions must be answered honestly, otherwise criminal proceedings may be instituted against him;

- the questions asked and the answers received.

5) Then:

- read the recorded questions and answers to the witness;

- or ask the witness to read all the recorded questions and answers personally.

6) Please indicate in the transcript that the representative of the relevant authority of the USA has read the questions and answers to the witness or that the witness has read all the recorded questions and answers personally.

7) Every page of the transcript of interrogation must be signed by the interrogated person. Then the transcript must be signed by the representative of the relevant authority of the USA conducting the interrogation.

Taking into account the high importance of the evidences of the employees of ACTEX CORP. to ascertain the truth, I ask to consider the possibility of participation of the two officers of the Office of the Security Service of Ukraine in Dnipropetrovsk region in the interrogations.

**Contact person:**

If you have any questions concerning this request, its execution, or participation of our officers in the investigation, please contact Oleg Mykolayovych Smolyarenko, a senior investigator of special cases of the Investigation Department of the Office of the Security Service of Ukraine in Dnipropetrovsk region, phone 38-056-791-99-34, fax 38-056-744-85-05.

Because of the limited terms of prejudicial inquiry please reply at your earliest convenience.



Translator                                                                                          L.O. Kulchitska

16

The address of the Office of the Security Service of Ukraine in Dnipropetrovsk region: 49600, Dnipropetrovsk, vul. Chkalova, 23.

Enclosed: phototable No1 with a reference, copies of the following documents: Invoices No Y379910 - Y379913 dated as of 06/07/2006, Y379898 - Y379903 dated as of 05/11/2006, Y379907, Y379908 dated as of 05/31/2006, unnumbered dated as of 06/08/2006, 082/06 dated as of 06/26/2006, 064/06, 065/06 dated as of 06/14/2006, 112/06, 113/06 dated as of 09/11/2006, 117/06 dated as of 10/07/2006, C379932 dated as of 08/14/2006, C379937 dated as of 09/06/2006, bills of lading No 5 dated as of 06/16/2006, 27 - 32 dated as of 05/14/2006, 33, 34 dated as of 06/04/2006, 16 dated as of 08/19/2006, 15 dated as of 09/09/2006, letters No 251-5522 dated as of 30.06.2006, No IP/5014/06/331/18932/ЄC/A7/1 dated as of 08.08.2006, No 410 dated as of 01.08.2006 of the representative of MAZDA car manufacturer in Turkey, the envelope of MEROTO, altogether on 36 pages.

Kind regards,

The Head of the Investigation Department
of the Office of the Security Service of Ukraine
in Dnipropetrovsk Region
lieutenant colonel of justice                                    S.O. Melnikov

January, 12 , 2007



Translator                                                       L.O. Kulchitska

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

IN RE LETTER OF REQUEST )
FROM THE UKRAINE )
IN THE MATTER OF )     Misc No. 07-
ACTEX CORPORATION )

<u>ORDER</u>

Upon application of the United States of America; and upon examination of a letter of request from the Ukraine whose authorities are seeking certain testimony and information from individuals which may be found in this District, for use in a judicial proceeding in the Ukraine and the Court being fully informed in the premises, it is hereby

**ORDERED**, pursuant to Title 28, United States Code, Section 1782, that David L. Hall, Assistant United States Attorney, hereby is appointed as Commissioner of this Court and is hereby directed to execute the letter of request from Ukrainian authorities as follows:

1. to take such steps as are necessary, including issuance of commissioner's subpoenas to be served on persons within the jurisdiction of this Court, to collect the evidence requested;

2. provide notice with respect to the collection of evidence to those persons identified in the requests as parties to whom notice should be given (and no notice to any other party shall be required);

3. adopt procedures to collect the evidence requested consistent with its use as evidence in a proceeding before a Court in the Ukraine, which procedures may be specified in the request or provided by the Ukrainian authorities;

4. seek such further orders of this Court as may be necessary to execute this request; and

5. certify and submit the evidence collected to the Office of International Affairs, Criminal Division, United States Department of Justice, or as otherwise directed by that office for transmission to the Ukrainian authorities.

IT IS FURTHER ORDERED that, in collecting the evidence requested, the Commissioner may be accompanied by persons whose presence or participation is authorized by the Commissioner.

Dated:  This _____ day of _____, 2007.


_____
United States District Court Judge

2